<u>**AMENDED PLAN SUPPLEMENT EXHIBIT F**</u>

**WARRANT AGREEMENT**

# WARRANT AGREEMENT

THIS WARRANT AGREEMENT dated as of March __, 2011 (this *"Agreement"*) is by and between InSight Health Services Holdings Corp., a Delaware corporation (the *"Company"*), and American Stock Transfer & Trust Company, LLC, as warrant agent (in such capacity, the *"Warrant Agent"*).

## RECITALS:

WHEREAS, concurrently with the execution hereof, the Company is emerging from the protection of Chapter 11 of the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§101-1330 (the *"Bankruptcy Code"*) pursuant to that certain Debtors' Prepackaged Joint Chapter 11 Plan of Reorganization, dated December 10, 2010, as the same may be supplemented, amended and restated from time to time (the *"Plan"*).

WHEREAS, pursuant to the terms of, and subject to the conditions contained in, the Plan, the Company has agreed to issue to the Persons holding common stock in the Company on the Effective Date (immediately prior to the consummation of the Plan), on the Effective Date, Company warrants (the *"Warrants"*) entitling the holders thereof to purchase at the Warrant Exercise Price their pro rata share of two percent (2%) of the Common Stock (as defined below) of the Company, on a fully-diluted basis (but subject to dilution on or after the Effective Date for awards under the Management Equity Plan and other issuances of Equity Securities (as defined in the Stockholders Agreement (as defined below))).

WHEREAS, the Warrants are being issued pursuant to the terms of, and subject to the conditions contained in, the Plan in an offering in reliance on the exemption afforded by section 1145 of the Bankruptcy Code from the registration requirements of the Securities Act and any applicable state securities or "blue sky" laws.

WHEREAS, the Company wishes the Warrant Agent to act on its behalf, and the Warrant Agent is willing to act on behalf of the Company, in connection with the issuance, exchange, transfer, substitution and exercise of the Warrants.

WHEREAS, the Company desires to enter into this Agreement to set forth the terms and conditions of the Warrants and the rights and obligations of the Company, the Warrant Agent and the registered holders of the Warrant Certificates (as defined below) and Book-Entry Warrants (as defined below) evidencing Warrants (the *"Holders"*).

WHEREAS, capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Plan.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements set forth herein and in the Plan, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company and the Warrant Agent, intending to be legally bound, hereby agree as follows:

# ARTICLE I
## DEFINITIONS AND INTERPRETATION

**Section 1.1    Certain Defined Terms**. Capitalized terms used in this Agreement shall have the following respective meanings, except as otherwise provided herein or as the context shall otherwise require:

*"Affiliate"* means, with respect to any Person, (i) any other Person of which securities or other ownership interests representing more than fifty percent (50%) of the voting interests are, at the time such determination is being made, owned, Controlled or held, directly or indirectly, by such Person or (ii) any other Person which, at the time such determination is being made, is Controlling, Controlled by or under common Control with, such Person. As used herein, *"Control",* whether used as a noun or verb, refers to the possession, directly or indirectly, of the power to direct, or cause the direction of, the management or policies of a Person, whether through the ownership of voting securities or otherwise.

*"Agreed Value"* means $215, the value per share of Common Stock to be used to set the initial Warrant Exercise Price.

*"Agreement"* has the meaning specified in the introduction of this Agreement.

*"Black Scholes Value"* means the value of a Warrant at the time of redemption pursuant to <u>Section 6.3</u>, as applicable, as determined in the reasonable judgment of the Board of Directors, exercised in good faith, immediately prior to such redemption (based upon the advice of an independent investment bank of national standing selected by the Company) and shall be determined by customary investment banking practices using the Black/Scholes model, utilizing an implied volatility as determined in reference to comparable healthcare companies by the Board of Directors in good faith based upon the advice of an independent investment bank of national standing selected by the Company and assuming a duration of the Warrant equal to the remaining life of the Warrant (assuming an Expiration Date of March __, 2014).

*"Board of Directors"* means the board of directors of the Company.

*"Book-Entry Warrants"* means Warrants issued by book-entry registration on the books and records of the Warrant Agent.

*"Business Day"* means any day which is not a day on which banking institutions in New York City, New York are authorized or obligated by law or executive order to close.

*"Certificate of Incorporation"* means the Second Amended and Restated Certificate of Incorporation of the Company, adopted as of the Effective Date, as the same may be amended or restated from time to time.

*"Common Stock"* means the common stock, par value $0.01 per share, of the Company, as constituted on the date hereof, any such stock into which such Common Stock shall have changed or any stock resulting from any reclassification of such Common Stock and any shares of the Company's capital stock issued with respect to shares of Common Stock by way of stock

2

split or other recapitalization, in each case which have no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company and which are not subject to redemption by the Company.

*"Commission"* means the Securities and Exchange Commission, or any other federal agency at the time administering the Securities Act or the Exchange Act, whichever is the relevant statute for the particular purpose.

*"Company"* has the meaning specified in the introduction of this Agreement.

*"Company Holder Notice"* has the meaning specified in <u>Section 2.4(d)</u>.

*"Current Market Value"* means, with respect to any security (including Common Stock), as of a specified date (the *"date of calculation"*):

   (a) if such security is not listed on a national securities exchange, the value of such security as determined in good faith by the Board of Directors; or

   (b) if such security is listed on a national securities exchange, the average of the daily market prices of such security for the ten (10) consecutive trading days ending three (3) trading days before the date of calculation.

   As used herein, the term *"market price"* means, with respect to any security for any trading day, in the case of a security listed or admitted to trading on any national securities exchange, the closing sales price, regular way, on such day, or if no sale takes place on such day, the average of the closing bid and asked prices on such day on the principal national securities exchange on which such security is listed or admitted.

*"Drag-Along Sale"* has the meaning ascribed to such term in the Stockholders Agreement.

*"Exchange Act"* means the Securities Exchange Act of 1934, as amended.

*"Expiration Date"* means, with respect to any Warrant, March __, 2014, the third anniversary of the Original Issuance Date, or, if earlier (i) the date of the consummation of a Sale of Company pursuant to which the provisions of <u>Section 4.1(c)</u> apply or (iii) the date of the consummation of a Drag-Along Sale of such Warrant pursuant to <u>Section 2.4(e)</u>.

*"Fundamental Transaction"* has the meaning specified in <u>Section 4.1(c)</u>.

*"Governmental Authority"* means any international, supranational or national government, any state, provincial, local or other political subdivision thereof; any entity, authority or body exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government; any court, tribunal or arbitrator; any self-regulatory organization; or any securities exchange or quotation system.

***"Holders"*** has the meaning specified in the Recitals of this Agreement.

***"Laws"*** means all laws, statutes, rules, regulations, ordinances, orders, writs, injunctions or decrees and other pronouncements having the effect of law of any Governmental Authority.

***"Original Issuance Date"*** means March __, 2011, the Effective Date of the Plan.

***"Person"*** or "***person***" means any natural person, firm, limited liability company, general or limited partnership, association, corporation, company, joint venture, trust, Governmental Authority or other entity.

***"Plan"*** has the meaning specified in the Recitals of this Agreement.

***"Sale of the Company"*** means the bona fide sale, lease or transfer in one or a series of related transactions of (i) all or substantially all of the consolidated assets of the Company and its Subsidiaries or (ii) all or substantially all of the issued and outstanding shares of Common Stock to any Person or group of Persons whether direct or indirect or by way of any merger, statutory share exchange, recapitalization, reclassification, consolidation or other business combination transaction or purchase of beneficial ownership.

***"Securities Act"*** means the Securities Act of 1933, as amended.

***"Stockholders Agreement"*** means that certain Stockholders Agreement, dated as of the date hereof, by and among the Company and the Persons party thereto, as amended from time to time in accordance with its terms.

"***Subsidiary***" has the meaning ascribed to such term in the Stockholders Agreement.

***"Transfer"*** means any, directly or indirectly, sale, transfer, assignment, conveyance, pledge or other disposition, including by merger, operation of law, bequest or pursuant to any domestic relations order, whether voluntarily or involuntarily, other than a sale, transfer, assignment, conveyance or other disposition by or to the Company.

***"Transfer Notice"*** means a written notice to the Board of Directors and, if there be one in office, the Secretary of the Company, at least thirty (30) calendar days and not more than forty-five (45) calendar days prior to completion of a Transfer, which notice states (i) the name, address, facsimile number and e-mail address of the transferor and the transferee, (ii) the number of Warrants and underlying shares of Common Stock subject to the proposed Transfer and (iii) the proposed date of completion of the proposed Transfer.

***"Warrant Agent"*** has the meaning specified in the introduction of this Agreement.

***"Warrant Certificates"*** has the meaning specified in <u>Section 2.1(a)</u>.

"***Warrant Exercise Price***" means the Agreed Value multiplied by 0.00236, which represents the exercise price for each individual Warrant, subject to adjustment as set forth in Section 4.1.

"**_Warrant Statements_**" has the meaning specified in <u>Section 2.1(a)</u>.

**Section 1.2     Interpretation.** In this Agreement, unless a clear contrary intention appears:

(a)     the words "hereof," "herein" and "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular provision of this Agreement;

(b)     reference to any gender includes each other gender and the neuter;

(c)     all terms defined in the singular shall have the same meanings in the plural and vice versa;

(d)      reference to any Person includes such Person's heirs, executors, personal representatives, administrators, successors and assigns; _provided, however,_ that nothing contained in this clause (d) is intended to authorize any assignment not otherwise permitted by this Agreement;

(e)     reference to a Person in a particular capacity or capacities excludes such Person in any other capacity;

(f)     reference to any contract or agreement means such contract or agreement as amended, supplemented or modified from time to time in accordance with the terms thereof;

(g)     all references to Articles and Sections shall be deemed to be references to the Articles and Sections of this Agreement;

(h)     all references to Exhibits shall be deemed to be references to the Exhibits attached hereto which are made a part hereof and incorporated herein by reference;

(i)     the word "including" (and with correlative meaning "include") means including, without limiting the generality of any description preceding such term;

(j)     with respect to the determination of any period of time, the word "from" means "from and including" and the words "to" and "until" each means "to but excluding";

(k)	the captions and headings contained in this Agreement shall not be considered or given any effect in construing the provisions hereof if any question of intent should arise;

(l)	reference to any Law means such Law as amended, modified, codified, reenacted, supplemented or superseded in whole or in part, and in effect from time to time;

(m)	where any provision of this Agreement refers to action to be taken by any Person, which such Person is prohibited from taking, such provision shall be applicable whether such action is taken directly or indirectly by such Person; and

(n)	no provision of this Agreement shall be interpreted or construed against any party solely because that party or its legal representative drafted such provision.

## ARTICLE II
## ORIGINAL ISSUE OF WARRANTS

**Section 2.1	Form of Warrant Certificates or Warrant Statements**.

(a)	The Warrants shall be evidenced, at the Company's election, either (i) by certificates in registered form (the ***"Warrant Certificates"***), substantially in the form attached hereto as <u>Exhibit A</u>, and dated the date on which countersigned by the Warrant Agent or (ii) via book-entry registration on the books and records of the Warrant Agent with Warrant statements in a form determined by the Company and Warrant Agent (the "***Warrant Statements***"). Each Warrant shall represent the right, subject to the provisions of this Agreement and the Warrant Certificate or Warrant Statement, to purchase 0.00236 shares of Common Stock (subject to adjustment as set forth in <u>Section 4.1</u>) at the Warrant Exercise Price.

(b)	The Warrant Certificates and Warrant Statements may have such insertions, letters, numbers or other marks of identification and such legends and endorsements stamped, printed, lithographed or engraved thereon as may, consistently herewith, be determined to be necessary or appropriate by the officers of the Company executing such Warrant Certificates as evidenced by their execution of the Warrant Certificates, or as may be required to comply with any applicable Law or with any rule or regulation of any securities exchange or to conform to usage. The definitive Warrant Certificates or Warrant Statements shall be typed, printed, lithographed or engraved or produced by any combination of these methods or may be produced in any other manner permitted by applicable Law.

**Section 2.2	Legends**. Each Warrant Certificate originally issued to a Holder, or issued upon registration of transfer of, or upon exchange for or in lieu of, any Warrant Certificate shall bear the following legend:

"THIS WARRANT HAS BEEN, AND THE COMMON STOCK WHICH MAY BE PURCHASED PURSUANT TO THE EXERCISE OF THIS WARRANT (THE "WARRANT SHARES," AND TOGETHER WITH THIS WARRANT, THE "SECURITIES") WILL BE, ISSUED PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER SECTION 1145 OF THE BANKRUPTCY REFORM ACT OF 1978, AS AMENDED (THE "BANKRUPTCY CODE"). THE SECURITIES MAY BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), PROVIDED THAT THE HOLDER IS NOT DEEMED TO BE AN UNDERWRITER AS SUCH TERM IS DEFINED IN SECTION 1145(b) OF THE BANKRUPTCY CODE. IF THE HOLDER IS DEEMED TO BE AN UNDERWRITER AS SUCH TERM IS DEFINED IN SECTION 1145(b) OF THE BANKRUPTCY CODE, THEN THE SECURITIES MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED UNLESS (1) THERE IS AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAW OR (2) THE COMPANY IS IN RECEIPT OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY AND ITS COUNSEL THAT SUCH DISPOSITION IS EXEMPT FROM THE REGISTRATION AND PROSPECTUS DELIVERY REQUIREMENTS OF THE SECURITIES ACT AND OF ANY APPLICABLE STATE SECURITIES LAWS. THE WARRANTS REPRESENTED BY THIS CERTIFICATE CANNOT BE TRANSFERRED IN A TRANSACTION WHICH WOULD SUBJECT THE COMPANY TO THE REPORTING REQUIREMENTS OF THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED. IN ADDITION THIS WARRANT MAY NOT BE EXERCISED FOR COMMON STOCK IN A TRANSACTION WHICH WOULD SUBJECT THE COMPANY TO THE REPORTING REQUIREMENTS OF THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED. THIS WARRANT MUST BE SURRENDERED TO THE COMPANY OR ITS TRANSFER AGENT AS A CONDITION PRECEDENT TO THE SALE, PLEDGE OR OTHER TRANSFER OF ANY INTEREST IN ANY OF THE WARRANT SHARES REPRESENTED BY THIS WARRANT.

THE SECURITIES REPRESENTED BY THIS WARRANT ARE SUBJECT TO CERTAIN RESTRICTIONS ON EXERCISE, TRANSFER, SALE, ASSIGNMENT, PLEDGE, ENCUMBRANCE OR OTHER SIMILAR TRANSFER AS SET FORTH IN THE SECOND AMENDED AND RESTATED CERTIFICATE OF INCORPORATION OF THE COMPANY, A STOCKHOLDERS AGREEMENT AND A WARRANT AGREEMENT AMONG THE COMPANY AND THE WARRANT AGENT (ON BEHALF OF THE ORIGINAL HOLDERS OF THE WARRANT SHARES), COPIES OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE COMPANY."

845749.09-Chicago Server 2A - MSW

Each Holder further acknowledges and agrees that the Common Stock issued upon exercise of the Warrant if certificated shall bear a legend substantially in the form of the legend appearing above, and any other legends required by applicable federal and state securities laws, the Certificate of Incorporation of the Company, the Stockholders Agreement or otherwise called for by this Agreement or any other agreement between the Company and the Holder.

**Section 2.3    Execution and Delivery of Warrant Certificates and Warrant Statements**.

(a)    The Warrant Certificates, if any, shall be executed in the corporate name and on behalf of the Company by the Chairman (or any Co-Chairman) of the Board, the Chief Executive Officer, the President or any one of the Vice Presidents of the Company and attested to by the Secretary or one of the Assistant Secretaries of the Company, either manually or by facsimile signature printed thereon. The Warrant Certificates, if any, shall be countersigned by manual or facsimile signature of the Warrant Agent and shall not be valid for any purpose unless so countersigned. In the event that any officer of the Company whose signature shall have been placed upon any of the Warrant Certificates shall cease to be such officer of the Company before countersignature by the Warrant Agent and the issuance and delivery thereof, such Warrant Certificates may, nevertheless, be countersigned by the Warrant Agent and issued and delivered with the same force and effect as though such person had not ceased to be such officer of the Company.

(b)    At the times required by, and in accordance with the terms and conditions of, the Plan, the Company shall instruct the Warrant Agent to countersign, issue and deliver, at the expense of the Company, Warrant Certificates or Warrant Statements evidencing Warrants to purchase an aggregate of up to 20,401 shares of Common Stock, subject to adjustment as set forth herein. The Warrant Agent shall, and is hereby authorized to, countersign, issue and deliver such Warrants as and when so instructed by the Company.  In no event shall the Company or the Warrant Agent be required to issue any fractions of Warrants.  Warrants shall only be issued in whole numbers.

(c)    The Warrant Agent is hereby authorized to countersign, issue and deliver Book-Entry Warrants and Warrant Certificates as required by <u>Section 2.4</u> (in the case of a transfer or exchange), <u>Section 3.3(d)</u> (in the case of the exercise of less than all the Warrants represented by the surrendered Warrant Certificate or Book-Entry Warrant) or <u>ARTICLE V</u> (in the case of a lost, stolen, destroyed or mutilated Warrant Certificate or Warrant Statement).

**Section 2.4    Certain Transfer and Exercise Restrictions**.

(a)    The Warrant Agent shall maintain books, subject to such reasonable regulations as it may prescribe, for the registration of Warrant Certificates and Book-Entry Warrants and transfers and exchanges of Warrant Certificates and Book-Entry Warrants as provided in this Agreement.

(b)     Notwithstanding any other provision of this Agreement, no Holder shall Transfer any Warrants to any Person nor shall the Company effect the Transfer of any Warrants to any Person, if, upon consummation of such Transfer the Company would be required by the Securities Act or the Exchange Act, including Section 12(g) or 15(d) of the Exchange Act, or any other federal, state or local securities laws, to register any class of the Company's equity securities with the Commission or other similar regulatory authority or to file periodic reports under Section 13 or 15(d) of the Exchange Act, by virtue of such Transfer, as determined by the Board of Directors.  Any attempted Transfer that is prohibited by this Section and not approved by majority vote of the Board of Directors shall be null and void *ab initio* and shall not be effective to Transfer any Warrants.  The Company may seek any remedy available to it at law, in equity or otherwise, including an injunction prohibiting any such Transfer, to enforce the provisions of this Section 2.4.

(c)     The Warrants may be exercised only upon a Holder's completion and execution of the form of Joinder Agreement set forth in the Stockholders Agreement. Notwithstanding any other provision of this Agreement, the Company may restrict the exercise of any Warrants, if, upon consummation of such exercise the Company would be required by the Securities Act or the Exchange Act, including Section 12(g) or 15(d) of the Exchange Act, or any other federal, state or local securities laws, to register any class of the Company's equity securities with the Commission or other similar regulatory authority or to file periodic reports under Section 13 or 15(d) of the Exchange Act, by virtue of such exercise, as determined by the Board of Directors.

(d)     No Holder shall effect any Transfer of all or any portion of the Warrants, unless and until (i) such Holder shall have provided a Transfer Notice to the Company and the Warrant Agent, (ii) the transferee(s) has agreed in writing for the benefit of the Company to be bound by the terms and conditions of this Warrant Agreement and the Warrant, (iii) if requested by the Company, such Holder shall have furnished the Company and the Warrant Agent with an opinion of counsel reasonably satisfactory to the Company that such disposition will not require registration of such Warrants (or if and when exercised, the shares of Common Stock underlying the Warrants) under the Securities Act and (iv) such Holder has been advised by the Company in writing whether or not Section 2.4(b) has been satisfied (the ***"Company Holder Notice"***).  The Company shall provide the Company Holder Notice as promptly as reasonably practicable after the receipt of the Transfer Notice.

(e)     In addition to the other restrictions on Transfer set forth herein, each Warrant shall also be subject to Section 4.2 of the Stockholders Agreement (as if such Holder of Warrants were a Stockholder thereunder) and such provisions (together with all necessary definitions and cross references) are incorporated herein by reference, *mutatis mutandis.* In the case of a Drag-Along Sale under the Stockholders Agreement, any Warrants required to be Transferred pursuant to Section 4.2 of the Stockholders Agreement shall be deemed exercised for Common Stock or other securities, as the case may be, in accordance with the terms hereof and of the Warrant Certificate or Warrant Statement and the number of shares of Common Stock or other securities, as the case may be, issued in respect thereof shall be reduced by the number of

845749.09-Chicago Server 2A - MSW

shares having a value as determined in accordance with the terms hereof equal to the aggregate Warrant Exercise Price then payable by the Holder of such Warrants in connection with such exercise, and if such Warrants have no value or are otherwise not exercisable in accordance with the terms hereof and of such Warrant Certificates or Warrant Statements, they shall be deemed cancelled without payment. If requested by a Holder of Warrants, the Company shall provide a copy of the Stockholders Agreement to such Holder of Warrants.

(f)     Subject to Sections 2.4(b), (c), (d) and (e), a Holder may Transfer its Warrant Certificates or Book-Entry Warrants by written application to the Warrant Agent stating the name of the proposed transferee and otherwise complying with the terms of this Agreement and all applicable Laws. No such Transfer shall be effected until, and such transferee shall succeed to the rights of a Holder only upon, final acceptance and registration of the transfer by the Warrant Agent in the register in accordance with this Agreement. Prior to due presentation for registration of transfer, the Company, the Warrant Agent and any agent of the Company may deem and treat the Person in whose name the Warrant Certificates or Book-Entry Warrants are registered as the absolute owner thereof for all purposes (notwithstanding any notation of ownership or other writing thereon made by anyone), and neither the Company nor the Warrant Agent shall be affected by any notice to the contrary or be bound to recognize any equitable or other claim to or an interest in any Warrants on the part of any other Person and shall not be liable for any registration of transfer of Warrant Certificates or Book-Entry Warrants that are registered or to be registered in the name of a fiduciary or the nominee of a fiduciary unless made with actual knowledge that a fiduciary or nominee is committing a breach of trust in requesting such registration of transfer or with such knowledge of such facts that its participation therein amounts to bad faith. When Warrant Certificates or Book-Entry Warrants are presented to the Warrant Agent with a request to register the transfer thereof or to exchange them for an equal number of Warrant Certificates or Book-Entry Warrants of other authorized denominations, the Warrant Agent shall register the transfer or make the exchange as requested if the requirements of this Agreement for such transaction are met. To permit registrations of transfers and exchanges, the Company shall execute Warrant Certificates at the Warrant Agent's request. No service charge shall be made for any registration of transfer or exchange of Warrant Certificates or Book-Entry Warrants, but the Company or the Warrant Agent may require payment of a sum sufficient to cover any transfer tax or similar governmental charge payable in connection with any registration of transfer of Warrant Certificates or Book-Entry Warrants.

(g)     Except as otherwise provided in this Section 2.4, all Book-Entry Warrants and Warrant Certificates issued upon any registration of transfer or exchange of Warrants shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Agreement, as the Warrant Certificates or Book-Entry Warrants surrendered for registration of transfer or exchange.

(h)     The Board of Directors shall have the power to determine, in its sole and absolute discretion, all matters related to this Section 2.4, including matters necessary or desirable to administer or to determine compliance with this Section 2.4 and, absent manifest

error, the determinations of the Board of Directors shall be final and binding on the Company and the Holders.

Section 2.5    **Surrender and Cancellation of Warrant Certificates and Book-Entry Warrants**.  Any Warrant Certificate or Book-Entry Warrant surrendered for registration of transfer, exchange or exercise of the Warrants represented thereby or pursuant to Sections 2.4(e), 4.1(c), 6.2 or 6.3 shall, if surrendered to the Company, be delivered to the Warrant Agent, and all Warrant Certificates or Book-Entry Warrants surrendered or so delivered to the Warrant Agent shall be promptly canceled by the Warrant Agent and shall not be reissued by the Company or the Warrant Agent and, except as provided in Section 2.4 (in the case of a transfer or exchange), Section 3.3(d) (in the case of the exercise of less than all the Warrants represented by the surrendered Warrant Certificate or Book-Entry Warrnts) or ARTICLE V (in the case of a lost, stolen, destroyed or mutilated Warrant Certificate or Warrant Statement), no Warrant Certificate or Book-Entry Warrant shall be issued hereunder in lieu thereof. On request of the Company, the Warrant Agent, provided that any retention periods established by the Commission have expired, shall destroy canceled Warrant Certificates held by it and shall deliver its certificates of destruction to the Company. The Warrant Agent shall destroy all canceled Warrant Certificates in accordance with its normal procedures.

## ARTICLE III
## WARRANT EXERCISE PRICE; EXERCISE OF WARRANTS

Section 3.1    **Warrant Exercise Price**. Each Warrant Certificate or Book-Entry Warrant shall, when countersigned by the Warrant Agent, entitle the Holder thereof, subject to the provisions of this Agreement and such Warrant Certificate or Warrant Statement, to purchase 0.00236 shares of Common Stock (subject to adjustment as provided in Section 4.1) for each Warrant represented thereby at the Warrant Exercise Price, payable in full at the time of purchase.

Section 3.2    **Exercise; Expiration Date**. Subject to Section 2.4(c), each outstanding Warrant may be exercised on any Business Day which is on or before the Expiration Date, but only if the exercise of such Warrant is exempt from the registration requirements of the Securities Act; *provided* that such Holder shall have completed and duly executed the Subscription Form set forth in the Warrant Certificate or Warrant Statement and the Joinder Agreement set forth in the Stockholders Agreement. Any Warrants not exercised by 5:00 p.m., New York City time, on the Expiration Date (or, if applicable, immediately prior to consummation of a Drag-Along Sale or a transaction pursuant to Section 4.1(c), in each case, occurring prior to the Expiration Date) shall expire and all rights thereunder and all rights in respect thereof under this Agreement shall automatically terminate at such time.

Section 3.3    **Method of Exercise; Cashless Exercise**.

(a)      Subject to Section 3.3(d), all or any of the Warrants represented by a Warrant Certificate or Book-Entry Warrant may be exercised prior to the Expiration Date by the Holder thereof by: (i) surrendering the Warrant Certificate or Book-Entry Warrant evidencing such Warrants to the Warrant Agent at its corporate trust office set forth in Section 9.3 (with (x) the Subscription Form set forth in the Warrant Certificate or Warrant Statement and (y) the

Joinder Agreement set forth in the Stockholders Agreement, in each case fully completed and duly executed), and (ii) delivering to the Warrant Agent a written notice of the Holder's election to exercise the number of the Warrants specified therein, duly executed by such Holder, which notice shall be in the form of the notice on the reverse of, or attached to, such Warrant Certificate or Warrant Statement, and which exercise shall be irrevocable (subject to <u>Section 2.4(c)</u>). Subject to <u>Sections 2.4(e)</u> and <u>3.3(b)</u>, such documents referenced above shall be accompanied by payment in full of the Warrant Exercise Price then in effect for each share of Common Stock for which such Warrant is exercised, together with any documentary, stamp or transfer tax, or other applicable tax or governmental charges.

        (b)      Payment of the Warrant Exercise Price shall be made at the option of the Holder (i) as described in <u>Section 3.3(c)</u> and/or (ii) if the Current Market Value of a share of Common Stock multiplied by 0.00236 is greater than the Warrant Exercise Price, by the Holder's surrender to the Company of Warrants representing shares of Common Stock or fractions thereof having an aggregate Current Market Value equal to or greater than the Warrant Exercise Price, or (iii) any combination thereof, duly endorsed by or accompanied by appropriate instruments of transfer duly executed by the Holder. If the Holder elects to make payments of the Warrant Exercise Price by surrendering Warrants as provided in clause (ii) hereof, the Holder shall tender to the Warrant Agent the Warrant for the amount being so exchanged, along with the notice of exercise indicating Holder's election to exchange all or part of the Warrant, and the Company shall issue to the Holder upon exercise a number of shares of Common Stock computed using the following formula:

$$X = Y*(A-B)/A$$

where:

$X =$     the number of shares of Common Stock to be issued to the Holder;

$Y =$     the number of shares of Common Stock purchased with each Warrant if payment of the Warrant Exercise Price were made in cash, multiplied by the number of Warrants exercised;

$A =$     the Current Market Value of a share of Common Stock determined as of the exercise date; and

$B =$     the then Warrant Exercise Price, divided by 0.00236.

        (c)      Payment of the Warrant Exercise Price shall be made by the Holder by certified bank check or official bank check in New York Clearing House funds payable to the order of the Company and delivered to the Warrant Agent at the address set forth in <u>Section</u>

9.3(c). Upon the exercise of any Warrant, the Warrant Agent shall promptly provide written notice of such exercise to the Company, including notice of the number of shares of Common Stock to be issued upon the exercise of such Warrant, and deliver all payments received upon exercise of such Warrant to the Company in such manner as the Company shall instruct in writing.

(d) Partial Exercise; Surrender of Warrant Certificates and Book-Entry Warrants. A Holder may exercise all or any number of whole Warrants represented by a Warrant Certificate or Book-Entry Warrants; provided that, so long as a Holder owns a sufficient number of Warrants, a Holder shall always exercise Warrants in a sufficient amount to obtain at least a full share of Common Stock upon such exercise. If less than all of the Warrants represented by a Warrant Certificate are exercised, such Warrant Certificate shall be surrendered and a new Warrant Certificate executed by the Company of the same tenor and for the number of Warrants which were not exercised shall be issued by the Warrant Agent. The Warrant Agent shall (i) countersign such Warrant Certificate, (ii) register such Warrant Certificate in such name or names as may be directed in writing by the Holder and (iii) deliver the new Warrant Certificate to the Person or Persons in whose name such new Warrant Certificate is so registered. If less than all Warrants represented by a Book-Entry Warrant are exercised, the Warrant Agent shall reduce the Warrant register and such Holder's position by the whole number of Warrant duly exercised. Any Warrant Certificate surrendered for exercise shall, if surrendered to the Company, be delivered to the Warrant Agent, and all Warrant Certificates surrendered or so delivered to the Warrant Agent shall be promptly cancelled by the Warrant Agent and shall not be reissued by the Company. The Warrant Agent shall destroy such cancelled Warrant Certificates and deliver its certificate of destruction to the Company, unless the Company shall otherwise direct.

(e) Issuance of Common Stock. Upon surrender of a Book-Entry Warrant or Warrant Certificate evidencing Warrants in conformity with the foregoing provisions and payment of the Warrant Exercise Price in respect of the exercise of one or more Warrants evidenced thereby, the Warrant Agent shall, when such payment is received and subject to Section 9.2, deliver to the Company the notice of exercise received pursuant to Section 3.3(a), deliver or deposit all funds received as instructed in writing by the Company and advise the Company by telephone at the end of such day of the amount of funds so deposited to its account. The Company shall thereupon, as promptly as practicable, and in any event within ten (10) Business Days after receipt by the Company of such notice of exercise, execute or cause to be executed and deliver or cause to be delivered to the Holder a certificate or certificates representing the aggregate number of shares of Common Stock issuable upon such exercise (based upon the aggregate number of Warrants so exercised), determined in accordance with Section 3.3(h), together with an amount in cash in lieu of any fractional share(s), if the Company so elects pursuant to Section 4.5. The certificate or certificates so delivered shall be, to the extent possible, in such denomination or denominations as such Holder shall request in such notice of exercise and shall be registered or otherwise placed in the name of, and delivered to, the Holder.

(f) Notice to Transfer Agent. Upon the exercise of any Warrant, the Warrant Agent is hereby authorized and directed to notify any transfer agent of the Common Stock upon

13

the exercise of any Warrant. Upon such notification, such transfer agent (and all such transfer agents are hereby irrevocably authorized to comply with this Section 3.3(f)) shall register on its books the necessary number of shares of Common Stock issuable upon such exercise (based upon the aggregate number of Warrants so exercised), determined in accordance with Section 3.3(h); *provided* that such Holder shall have completed and duly executed the Subscription Form set forth in the Warrant Certificate or Warrant Statement and the Joinder Agreement set forth in the Stockholders Agreement.

(g)     Time of Exercise. Subject to Section 2.4(c), except for exercises in connection with and conditioned upon a Drag-Along Sale or a transaction pursuant to Section 4.1(c), any Warrant exercised hereunder shall be deemed to have been effected immediately prior to the close of business on the day on which the Warrant Certificate or Book-Entry Warrant representing such Warrant shall have been surrendered for exercise as provided above, together with the notice of exercise referred to above and payment in full of the Warrant Exercise Price (unless settlement is on a cashless basis pursuant to Section 3.3(b)) and any documentary, stamp or transfer tax, or other applicable tax or governmental charges. At such time, the certificates for the shares of Common Stock issuable upon such exercise as provided in Section 3.3(e) shall be deemed to have been issued and, for all purposes of this Agreement, the Holder shall, as between such Person and the Company, be deemed to be and entitled to all rights of the holder of record of such Common Stock.

(h)     Shares Issuable. The number of shares of Common Stock "obtainable upon exercise" of Warrants at any time shall be the number of shares of Common Stock for which such Warrants are then exercisable. The number of shares of Common Stock "for which each Warrant is exercisable" shall be 0.00236 shares, subject to adjustment as provided in Section 4.1.

## ARTICLE IV
## ADJUSTMENTS

**Section 4.1     Adjustments**. The number of shares of Common Stock for which each Warrant is exercisable shall be subject to adjustment from time to time as follows:

(a)     Upon Subdivisions or Splits. If, at any time after the Original Issuance Date, the number of shares of Common Stock outstanding is increased by a subdivision or stock split of shares of Common Stock, other than, in any such case, upon a Drag-Along Sale, a capital reorganization, reclassification, consolidation or merger to which Section 4.1(c) applies, then, on the day following the effective date of such subdivision or stock split, the number of shares of Common Stock or portion of a share of Common Stock obtainable upon exercise of the Warrants shall be increased in proportion to such increase in outstanding shares of Common Stock. The adjustment made pursuant to this Section 4.1(a) shall become effective at the time when such subdivision or stock split becomes effective with respect to all holders of Common Stock.

14

(b)     Upon Combinations or Reverse Splits. If, at any time after the Original Issuance Date, the number of shares of Common Stock outstanding is decreased by a combination or reverse split of the outstanding shares of Common Stock into a smaller number of shares of Common Stock, other than, in any such case, upon a Drag-Along Sale, a capital reorganization, reclassification, consolidation or merger to which Section 4.1(c) applies, then the number of shares of Common Stock or portion of a share of Common Stock obtainable upon exercise of the Warrants immediately prior to the date of such combination or reverse split shall be decreased in proportion to such decrease in outstanding shares of Common Stock. The adjustment made pursuant to this Section 4.1(b) shall become effective at the time when such combination or reverse split becomes effective with respect to all holders of Common Stock.

(c)     Upon Reclassifications, Reorganizations, Consolidations or Mergers.

(i)     In the event of any capital reorganization of the Company, any reclassification of any Common Stock, any sale of all or substantially all of the Company's assets or any consolidation, combination or merger of the Company with or into another company, resulting in a Sale of the Company but not a Drag-Along Sale (a **"Fundamental Transaction"**), the Company shall not effect any such Fundamental Transaction, unless, at the Company's option either (A) the Company, or such successor corporation or transferee of the Company, as the case may be, shall make appropriate provision by amendment of this Agreement or by the successor corporation or transferee executing a replacement agreement with the Holder so that the Holder shall have the right at any time after the consummation of such Fundamental Transaction, upon exercise of the Warrant (in lieu of the number of shares of Common Stock theretofore deliverable) to only receive the kind and amount of securities, cash and other property receivable upon such Fundamental Transaction as would be received by a holder of the number of shares of Common Stock issuable upon exercise of the Warrant immediately prior to such Fundamental Transaction or (B) simultaneously with the consummation of a Fundamental Transaction, the Company shall redeem the Warrants and pay to each holder of a Warrant Certificate evidencing a number of Warrants, upon surrender thereof to the Company, in the same form of consideration as is received by holders of Common Stock in such transaction, in an amount equal to the positive difference, if any, between (y) the consideration that would be received upon such consummation by a holder of the number of shares of Common Stock deliverable (immediately prior to such consummation) upon exercise of such Warrants and (z) the aggregate Warrant Exercise Price therefor; *provided* that nothing contained in this Section 4.1(c) shall modify the rights set forth in Section 2.4(e) hereof or in Section 4.2 of the Stockholders Agreement. Each Holder acknowledges that application of this Section 4.1(c) may result in no consideration being received for the Warrants by such Holder.

(ii)     After compliance by the Company with this Section 4.1(c), each Holder shall (even if as a result of such compliance such Holder shall receive no consideration in respect of such Holder's Warrants) (A) consent to and raise no objections with respect to the Fundamental Transaction, (B) waive any dissenters rights,

appraisal rights or similar rights in connection with the Fundamental Transaction (if applicable), on the terms and conditions as may be approved by the Company and (C) surrender all Warrant Certificates and Book-Entry Warrants to the Warrant Agent, and all such Warrant Certificates or Book-Entry Warrants surrendered or so delivered to the Warrant Agent shall be promptly cancelled by the Warrant Agent and shall not be reissued by the Company. Each Holder shall take all actions determined by the Company to be necessary or desirable in connection with the consummation of the Fundamental Transaction, including, but not limited to, the execution of such agreements and instruments and other actions necessary to provide the representations, warranties, indemnities, covenants, conditions, escrows and other provisions and agreements relating to the Fundamental Transaction (if applicable) on the terms and conditions as may be approved by the Company.

(d) _Warrant Exercise Price Adjustment_. Whenever the number of shares of Common Stock for which a Warrant is exercisable is adjusted as provided in Sections 4.1(a) or (b), the Warrant Exercise Price payable upon exercise of the Warrant shall simultaneously be adjusted by multiplying such Warrant Exercise Price immediately prior to such adjustment by a fraction, the numerator of which shall be the number of shares of Common Stock for which such Warrant was exercisable immediately prior to such adjustment, and the denominator of which shall be the number of shares of Common Stock for which such Warrant was exercisable immediately thereafter.

(e) _De Minimis Adjustments_. No adjustment in the Warrant Exercise Price or the number of shares of Common Stock for which each Warrant is exercisable need be made unless the adjustment would require an increase or decrease of at least one percent (1%) in the Warrant Exercise Price or the number of shares of Common Stock for which each Warrant is exercisable. Any adjustments that are not made shall be carried forward and taken into account in any subsequent adjustment. All calculations under this Section 4.1 shall be made to the nearest 1/1,000th of a cent or to the nearest 1/100,000th of a share, as the case may be.

(f) _Determination of Current Market Value_. If at any time the Current Market Value of any security (including Common Stock) is required to be calculated pursuant to the terms of this Agreement, the determination of such Current Market Value, if calculated in good faith in accordance with the terms of this Agreement, absent manifest error, shall be conclusive and binding on all Persons.

**Section 4.2    Notice of Adjustment**. Whenever the Warrant Exercise Price or number of shares of Common Stock or other securities or property obtainable upon exercise of each Warrant is required to be adjusted pursuant to Section 4.1, the Company shall deliver to the Warrant Agent a certificate within a reasonable time after such event setting forth (a) the number of shares of Common Stock or other securities or property obtainable upon exercise of each Warrant and the Warrant Exercise Price therefor after such adjustment, (b) a brief statement of the facts requiring such adjustment and (c) the computation by which such adjustment was made. Such certificate shall be conclusive evidence of the correctness of such adjustment absent

manifest error. The Warrant Agent shall not be deemed to have knowledge of such adjustment unless and until it shall have received such certificate. The Company shall cause the Warrant Agent to mail notice of the adjustment described in such certificate to each Holder at the expense of the Company. The Warrant Agent shall be entitled to rely on such certificate and shall be under no duty or responsibility with respect to any such certificate, except to exhibit the same, from time to time, to any Holder desiring to inspect such certificate during reasonable business hours. The Warrant Agent shall not at any time be under any duty or responsibility to any Holder to determine whether any facts exist which may require any adjustment of the Warrant Exercise Price or the number of shares of Common Stock or other securities or property obtainable upon exercise of any Warrant, or with respect to the nature or extent of any such adjustment when made, or with respect to the method employed in making such adjustment, or the validity or value (or the kind or amount) of any shares of Common Stock or other securities or property that may be obtainable upon exercise of any Warrant. The Warrant Agent shall not be responsible for any failure of the Company to make any cash payment or to issue, transfer or deliver any shares of Common Stock or other securities or property upon the exercise of any Warrant.

**Section 4.3    Statement on Warrants**. The form of Warrant Certificate or Warrant Statement need not be changed because of any adjustment made pursuant to Section 4.1, and Warrant Certificates and Warrant Statements issued after such adjustment may state the same Warrant Exercise Price and the same number and kind of shares of Common Stock as are stated in the Warrant Certificates or Warrant Statements initially issued pursuant to this Agreement. The Company may, however, at any time in its sole discretion (which shall be conclusive), make any change in the form of Warrant Certificate or Warrant Statement that it may deem appropriate to reflect any such adjustment and that does not affect the substance thereof and any Warrant Certificate or Warrant Statement thereafter issued or countersigned, whether in exchange or substitution for an outstanding Warrant Certificate or Warrant Statement or otherwise, may be in the form so changed.

**Section 4.4    Notice of Consolidation, Merger or Sale of Substantially All Assets, Etc**. In the event that, at any time after the date hereof and prior to 5:00 p.m., New York City time, on the Expiration Date, (a) the Company shall consolidate or combine with another company, merge with or into another company or sell, transfer or otherwise dispose of all or substantially all of its assets pursuant to which the provisions of Section 4.1(c) apply or (b) the Company shall dissolve, liquidate or wind-up its operations, then, in each such case, the Company shall cause to be mailed to the Warrant Agent and each Holder, at the earliest practicable time (and, in any event, not less than ten (10) calendar days before any date set for closing), notice of the date on which such consolidation, combination, merger, sale, dissolution, liquidation or winding up shall take place, as the case may be.

**Section 4.5    Fractional Shares**. Notwithstanding anything to the contrary contained in this Agreement, the Company shall not be required to issue any fraction of a share of Common Stock upon any subsequent exercise of any Warrant, including where such fraction is the result of the number of shares of Common Stock obtainable upon exercise of a Warrant being adjusted pursuant to the provisions of Section 4.1. If Warrant Certificates or Book-Entry Warrants evidencing more than one Warrant shall be surrendered for exercise at the same time by the same Holder, the number of full shares of Common Stock that shall be issuable upon such exercise thereof shall be computed on the basis of the aggregate number of Warrants evidenced

by Warrant Certificates or Book-Entry Warrants so surrendered. If any fraction of a share of Common Stock would, except for the provisions of this Section 4.5, be issuable on the exercise of any Warrant (or specified portion thereof), in lieu of the issuance of such fractional share of Common Stock, the Company may pay the Holder of such Warrant an amount in cash equal to the then Current Market Value per share of Common Stock, as determined by the Board of Directors, multiplied by such fraction (computed to the nearest whole cent). The Holders, by their acceptance of the Warrant Certificates and Book-Entry Warrants, expressly waive their right to receive any fraction of a share of Common Stock instead of such cash.

Section 4.6 **Concerning All Adjustments**. Notwithstanding anything to the contrary contained in this Agreement, if an adjustment is made under any provision of ARTICLE IV on account of any event, transaction, circumstance, condition or happening, no additional adjustment shall be made under any other provision of ARTICLE IV on account of such event, transaction, circumstance, condition or happening. Unless otherwise expressly provided in this ARTICLE IV, all determinations and calculations required or permitted under this ARTICLE IV shall be made by the Company or its Board of Directors, as appropriate, and all such calculations and determinations shall be conclusive and binding in the absence of manifest error.


# ARTICLE V
## LOSS, THEFT, DESTRUCTION OR MUTILATION OF
## WARRANT CERTIFICATES AND WARRANT STATEMENTS

Section 5.1 **Loss, Theft, Destruction or Mutilation**. Upon receipt by the Company and the Warrant Agent of evidence satisfactory to them of the ownership and the loss, theft, destruction or mutilation of any Warrant Certificate or Warrant Statement, and an indemnity bond in form and amount and with corporate surety satisfactory to them, and (in the case of mutilation) upon surrender and cancellation thereof, then, in the absence of notice to the Company or the Warrant Agent that the Warrants represented thereby have been acquired by a bona fide purchaser, the Company shall issue and the Warrant Agent shall countersign and deliver to the Holder of the lost, stolen, destroyed or mutilated Warrant Certificate or Warrant Statement, in exchange and substitution for or in lieu thereof, a new Warrant Certificate or Warrant Statement of the same tenor and representing an equivalent number of Warrants. Upon the issuance of any new Warrant Certificate or Warrant Statement under this ARTICLE V, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and other expenses (including the fees and expenses of the Warrant Agent) in connection therewith. The provisions of this ARTICLE V are exclusive and shall preclude (to the extent lawful) all other rights or remedies with respect to the replacement of lost, stolen, destroyed or mutilated Warrant Certificates and Warrant Statements.


# ARTICLE VI
## AUTHORIZATION AND RESERVATION OF COMMON
## STOCK; PURCHASE OF WARRANTS

Section 6.1 **Reservation of Authorized Common Stock**. The Company will at all times reserve and keep available, from its authorized and unissued Common Stock solely

for issuance and delivery upon the exercise of the Warrants and free of preemptive rights, such number of shares of Common Stock and other securities, cash or property as from time to time shall be issuable upon the exercise in full of all outstanding Warrants. The Company further covenants that it shall, from time to time, take all steps necessary to increase the authorized number of shares of its Common Stock if at any time the authorized number of shares of Common Stock remaining unissued would otherwise be insufficient to allow delivery of all the shares of Common Stock then deliverable upon the exercise in full of all outstanding Warrants. The Company covenants that all shares of Common Stock issuable upon exercise of the Warrants will, upon issuance, be duly and validly issued, fully paid and nonassessable and will be free from all taxes, liens and charges in respect of the issue thereof (other than taxes in respect of any transfer occurring contemporaneously or otherwise specified herein). The Company shall take all such actions as may be necessary to ensure that all such shares of Common Stock may be so issued without violation of any requirements of any domestic stock exchange upon which shares of Common Stock may be listed (except for official notice of issuance which shall be immediately delivered by the Company upon each such issuance). The Company covenants that the stock certificates issued to evidence any shares of Common Stock issued upon exercise of Warrants will comply with the Delaware General Corporation Law and any other applicable law.

**Section 6.2     Purchase of Warrants by the Company**.  The Company shall have the right to purchase or otherwise acquire Warrants at such times, in such manner and for such consideration as it may deem appropriate. In the event the Company shall purchase or otherwise acquire Warrants, the related Warrant Certificates shall thereupon be delivered to the Warrant Agent for cancellation, and any related Book-Entry Warrants shall be cancelled. Any Warrants purchased or otherwise acquired by the Company shall not be outstanding for any purpose.

**Section 6.3     Right to Redeem Warrants**. The Company shall have the right, at any time after the date that is six (6) months after the Effective Date (the "***Redemption Date***"), to redeem Warrants from Holders at a price per Warrant equal to its then Black Scholes Value, at such times and in such manner as it may deem appropriate; *provided,* that Warrants, to the extent redeemed, shall be redeemed from Holders in reverse order of the number of Warrants held, such that Holders of the smallest number of Warrants shall be redeemed first; *provided further*, *however,* that (i) the Company shall have the right to redeem Warrants from Holders at a price per Warrant equal to its then Black Scholes Value, at such times and in such manner as it may deem appropriate, including prior to the Redemption Date, to the extent necessary to prevent the Company from being required by the Securities Act or the Exchange Act, including Section 12(g) or 15(d) of the Exchange Act, or any other federal, state or local securities laws, to register any class of the Company's equity securities with the Commission or other similar regulatory authority or to file periodic reports under Section 13 or 15(d) of the Exchange Act, as determined by the Board of Directors and (ii) in the event of any such redemption from the DTC participants that received Warrants under the Plan as holders of common stock in the Company on the Effective Date (immediately prior to the consummation of the Plan) on behalf of beneficial owners of such common stock, such beneficial holders at the time of such redemption shall only be entitled to receive in lieu of such Warrants the redemption price for such Warrants as determined on the date of redemption and shall not be Holders hereunder.  In the event the Company shall purchase or otherwise acquire such Warrants, the related Warrant Certificates shall thereupon be, delivered to the Warrant Agent for cancellation, and any related Book-Entry

Warrants shall be cancelled. Any Warrants purchased or otherwise acquired by the Company shall not be outstanding for any purpose.

## ARTICLE VII
## WARRANT HOLDERS NOT DEEMED STOCKHOLDERSS

**Section 7.1    No Stockholder Rights**. Prior to the exercise of any Warrant and completion and execution of the Joinder Agreement set forth in the Stockholders Agreement, nothing contained in this Agreement or any Warrant Certificate or Warrant Statement shall be construed as conferring on the Holder of any Warrant or Warrant Certificate or Book-Entry Warrant any rights whatsoever as a stockholder of the Company, either at law or in equity, including the right to vote on or to consent to any action of the stockholders, to receive dividends or other distributions, to exercise any preemptive right or to receive any notice of meetings of stockholders and, except as otherwise provided in this Agreement, shall not be entitled to receive any notice of any proceedings of the Company.

## ARTICLE VIII
## WARRANT AGENT

**Section 8.1    Appointment and Acceptance of Agency**. The Company hereby appoints the Warrant Agent to act as agent for the Company in accordance with the instructions set forth in this Agreement and the Warrant Agent hereby accepts the agency established by this Agreement and agrees to perform the same on the terms and conditions herein set forth.

**Section 8.2    Correctness of Statements; Distribution of Warrants**. The statements contained herein and in each Warrant Certificate and Warrant Statement shall be taken as statements of the Company, and the Warrant Agent assumes no responsibility for the correctness of any of the same except as describe the Warrant Agent or any action taken by it. The Warrant Agent assumes no responsibility with respect to the distribution of the Warrants except as herein otherwise provided.

**Section 8.3    Use of Agents**. The Warrant Agent may execute and exercise any of the rights or powers hereby vested in it or perform any duty thereunder either itself (through its employees) or by or through its attorneys or agents (which shall not include its employees) and shall not be responsible for the misconduct or gross negligence of any agent appointed; *provided* that due care had been exercised in the appointment and continued employment thereof.

**Section 8.4    Proof of Actions Taken**. Whenever in the performance of its duties under this Agreement, the Warrant Agent shall deem it necessary or desirable that any fact or matter be proved or established by the Company prior to taking or suffering any action hereunder, such fact or matter (unless such evidence in respect thereof be herein specifically prescribed) may, in the absence of bad faith on the part of the Warrant Agent, be deemed to be conclusively proved and established by a certificate signed by the Chairman of the Board, President, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, any Vice President, the Treasurer or Secretary of the Company and delivered to the Warrant Agent; and such certificate, in the absence of bad faith on the part of the Warrant Agent, shall be full

845749.09-Chicago Server 2A - MSW

authorization to the Warrant Agent for any action taken, suffered or omitted by it under the provisions of this Agreement in reliance upon such certificate.

Section 8.5    **Compensation; Indemnity**.  The Company agrees to pay the Warrant Agent compensation for all services rendered by the Warrant Agent in the performance of its duties under this Agreement. The Company agrees to reimburse the Warrant Agent for all expenses, taxes and governmental charges and other charges of any kind and nature incurred by the Warrant Agent (including reasonable fees and expenses of the Warrant Agent's counsel and agents) in the performance of its duties under this Agreement. The Company also agrees to indemnify the Warrant Agent for, and to hold it harmless against, any loss, liability or expenses incurred without gross negligence or willful misconduct on the part of the Warrant Agent, for anything done or omitted by the Warrant Agent in connection with the acceptance and administration of this Agreement, including the costs and expenses of defending against any claim of liability in the premises. The indemnity provided for herein shall survive the expiration of the Warrants and the termination of this Agreement. The costs and expenses incurred in enforcing this right of indemnification shall be paid by the Company. Notwithstanding anything in this Agreement to the contrary, in no event shall the Warrant Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including lost profits), even if the Warrant Agent has been advised of the likelihood of such loss or damage and regardless of the form of the action.

Section 8.6    **Legal Proceedings**.    The Warrant Agent shall be under no obligation to institute any action, suit or legal proceeding or to take any other action likely to involve expense unless the Company or one or more Holders shall furnish the Warrant Agent with reasonable security and indemnity satisfactory to the Warrant Agent for any costs and expenses which may be incurred, but this provision shall not affect the power of the Warrant Agent to take such action as the Warrant Agent may consider proper, whether with or without any such security or indemnity. All rights of action under this Agreement or under any of the Warrants may be enforced by the Warrant Agent without the possession of any of the Warrants or the production thereof at any trial or other proceeding relative thereto, and any such action, suit or proceeding instituted by the Warrant Agent shall be brought in its name as Warrant Agent, and any recovery of judgment shall be for the ratable benefit of the Holders, as their respective rights or interests may appear, or the Company, as applicable.

Section 8.7    **Other Transactions Involving the Company**. The Warrant Agent and any stockholder, director, officer or employee of the Warrant Agent may buy, sell or deal in any of the Warrants or other securities of the Company or become pecuniarily interested in any transactions in which the Company may be interested, or contract with or lend money to the Company or otherwise act as fully and freely as though it were not Warrant Agent under this Agreement or such director, officer or employee. Nothing herein shall preclude the Warrant Agent from acting in any other capacity for the Company or for any other legal entity including acting as transfer agent or as a lender to the Company or an affiliate thereof.

Section 8.8    **Actions as Agent**. The Warrant Agent shall act hereunder solely as agent, and its duties shall be determined solely by the provisions of this Agreement. No implied duties or obligations shall be read into this Agreement against the Warrant Agent. The Warrant

Agent shall not be liable for anything which it may do or refrain from doing in connection with this Agreement except for its own gross negligence or willful misconduct.

Section 8.9    **Liability of Warrant Agent**. The Warrant Agent may conclusively rely upon and shall be protected by the Company and shall not incur any liability or responsibility to the Company or to any Holder for or in respect of any action taken, suffered or omitted by it in reliance on any Warrant Certificate or Warrant Statement or other securities of the Company, instrument of assignment or transfer, power of attorney, endorsement, affidavit, letter, direction, statement, notice, resolution, waiver, consent, order, certificate or other paper, document or instrument reasonably believed by it to be genuine and to have been signed, executed, sent, presented and, where necessary, verified or acknowledged, by the proper party or parties.

Section 8.10    **Validity of Agreement**. The Warrant Agent shall not be under any responsibility in respect of the validity of this Agreement or the execution and delivery hereof (except the due execution and delivery hereof by the Warrant Agent) or in respect of the validity or execution of any Warrant (except its counter-signature thereof); nor shall it be responsible for any breach by the Company of any covenant or condition contained in this Agreement or in any Warrant Certificate or Warrant Statement; nor shall the Warrant Agent by any act hereunder be deemed to make any representation or warranty as to the authorization or reservation of any underlying securities (or other equity interests) to be issued pursuant to this Agreement or any Warrant, or as to whether any underlying securities (or other equity interests) will, when issued, be validly issued, fully paid and non-assessable, or as to the Warrant Exercise Price or the number or amount of underlying securities or other securities or other property issuable upon exercise of any Warrant.

Section 8.11    **Acceptance of Instructions**. The Warrant Agent is hereby authorized and directed to accept instructions with respect to the performance of its duties hereunder from the Chairman of the Board, President, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, any Vice President or Secretary of the Company, and to apply to such officers for advice or instructions in connection with its duties, and shall not be liable for any action taken or suffered by it in good faith in accordance with instructions of any such officer or officers or for any delay in acting while waiting for those instructions.

Section 8.12    **Right to Consult and Rely Upon Counsel**. Before the Warrant Agent acts or refrains from acting, it may at any time consult with legal counsel (who may be legal counsel for the Company), and the opinion or advice of such counsel shall be full and complete authorization and protection to the Warrant Agent and the Warrant Agent shall incur no liability or responsibility to the Company or to any Holder for any action taken, suffered or omitted by it in good faith in accordance with the opinion or advice of such counsel.

Section 8.13    **Change of Warrant Agent**.

(a)    The Warrant Agent, or any successor to it hereafter appointed, may resign from its position as such and be discharged from all further duties and liabilities hereunder (except liabilities arising as a result of the Warrant Agent's own gross negligence or willful

misconduct), after giving thirty (30) days' prior written notice to the Company, upon (but only upon) a duly appointed successor Warrant Agent having been appointed and having accepted such appointment in writing. The Company may remove the Warrant Agent upon not less than thirty (30) days' prior written notice specifying the date when such discharge shall take effect, and the Warrant Agent shall thereupon in like manner be discharged from all further duties and liabilities hereunder (except liabilities arising as a result of the Warrant Agent's own gross negligence or willful misconduct), upon (but only upon) a duly appointed successor Warrant Agent having been appointed and having accepted such appointment in writing. The Company shall cause to be mailed, at the expense of the Company, to each Holder a copy of said notice of resignation or notice of removal, as the case may be. Upon such resignation or removal the Company shall appoint in writing a successor to the Warrant Agent. If the Company shall fail to make such appointment within a period of thirty (30) days after it has been notified in writing of such resignation by the resigning Warrant Agent or after such removal, then the existing Warrant Agent or the Holder of any Warrant may apply to any court of competent jurisdiction for the appointment of a successor to the Warrant Agent. Pending appointment of a successor to the original Warrant Agent, either by the Company or by such a court, the duties of the Warrant Agent shall be carried out by the Company.

(b) Any successor to the Warrant Agent, whether appointed by the Company or by a court, shall be a bank (or subsidiary thereof) or trust company doing business under the laws of the United States or any state thereof, in good standing and having a combined capital and surplus of not less than $50,000,000. The combined capital and surplus of any such successor to the Warrant Agent shall be deemed to be the combined capital and surplus as set forth in the most recent annual report of its condition published by such successor to the Warrant Agent prior to its appointment; *provided* that such reports are published at least annually pursuant to law or to the requirements of a federal or state supervising or examining authority. After acceptance in writing of such appointment by the successor to the Warrant Agent, it shall be vested with the same authority, powers, rights, immunities, duties and responsibilities as its predecessor Warrant Agent, without any further assurance, conveyance, act or deed; *provided, however,* the predecessor Warrant Agent shall in all events deliver and transfer to the successor Warrant Agent all property, if any, at the time held hereunder by the predecessor Warrant Agent and if for any reason it shall be necessary or expedient to execute and deliver any further assurance, conveyance, act or deed, the same shall be done at the expense of the Company and shall be legally and validly executed and delivered by the resigning or removed Warrant Agent. As soon as practicable after such appointment, the Company shall give notice thereof to the predecessor Warrant Agent and the Holders. Failure to give any notice provided for in this Section 8.13, however, or any defect therein, shall not affect the legality or validity of the resignation or removal of the Warrant Agent or the appointment of the successor Warrant Agent, as the case may be.

Section 8.14  **Successor Warrant Agent**. Any company into which the Warrant Agent may be merged or with which it may be consolidated, or any company resulting from any merger or consolidation to which the Warrant Agent shall be a party, shall be the successor Warrant Agent under this Agreement without any further act; *provided, however,* that such company would be eligible for appointment as a successor to the Warrant Agent under the provisions of Section 8.13. Any such successor Warrant Agent shall promptly cause notice of its

succession as Warrant Agent to be mailed to the Company and the Holders, at such Warrant Agent's sole expense.

**Section 8.15   Other**. No provision of this Agreement shall require the Warrant Agent to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or in the exercise of its rights if there shall be reasonable grounds for believing that repayment of such funds or adequate indemnification against such risk or liability is not reasonably assured to it.

# ARTICLE IX
# MISCELLANEOUS

**Section 9.1   Money Deposited with the Warrant Agent**. The Warrant Agent shall not be required to pay interest on any moneys deposited pursuant to the provisions of this Agreement, except such as it shall agree in writing with the Company to pay thereon. Any moneys, securities or other property which at any time shall be deposited by the Company or on its behalf with the Warrant Agent pursuant to this Agreement shall be and are hereby assigned, transferred and set over to the Warrant Agent in trust for the purpose for which such moneys, securities or other property shall have been deposited; but such moneys, securities or other property need not be segregated from other funds, securities or other property except to the extent required by law.

**Section 9.2   Payment of Taxes**. The Holder shall pay any and all taxes (including income taxes) that may be payable in respect of the issue or delivery of shares of Common Stock on exercise of Warrants pursuant hereto. In addition, the Company shall not be required to pay any tax or other charge imposed in respect of any transfer involved in the issue and delivery of any certificates for shares of Common Stock or payment of cash or other property to any recipient other than the Holder of the Warrant Certificate surrendered upon the exercise of a Warrant or the registered holder of a Book-Entry Warrant, and in case of such transfer or payment, the Warrant Agent and the Company shall not be required to issue or deliver any certificate or pay any cash until (a) such tax or charge has been paid or an amount sufficient for the payment thereof has been delivered to the Warrant Agent or the Company or (b) it has been established to the Company's satisfaction that any such tax or other charge that is or may become due has been paid.

**Section 9.3   Notices**.

(a)   Any notice, request, demand or report (each, a ***"Communication"***) required or permitted to be given or made by this Agreement shall be in writing.

(b)   Any Communication authorized by this Agreement to be given or made by the Warrant Agent or by any Holder to or on the Company shall be sufficiently given or made if sent by registered or certified overnight mail or by a nationally recognized overnight delivery service for next day delivery and shall be deemed given upon receipt, or by facsimile, addressed (until another address is filed by the Company with the Warrant Agent) as follows:

InSight Health Services Holdings Corp.
26250 Enterprise Court, Suite 100
Lake Forest, CA 92630
Tel:    (949) 282-6000
Fax:    (949) 462-3703
Attention:    General Counsel

with a copy to:

Black Diamond Capital Management, L.L.C.
One Conway Park
100 Field Drive, Suite 300
Lake Forest, IL 60045
Tel: (847) 615-9000
Fax: (847) 615-9064
Attention: Leslie A. Meier


and with a copy to:

Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, IL 60606
Tel: (312) 407-0700
Fax: (312) 407-8576
Attention    Kimberly A. deBeers


(c)    Any Communication authorized by this Agreement to be given or made by the Company or by any Holder to or on the Warrant Agent shall be sufficiently given or made if sent by registered or certified overnight mail or by a nationally recognized overnight delivery service for next day delivery and shall be deemed given upon receipt, or by facsimile, addressed (until another address is filed by the Warrant Agent with the Company) as follows:

American Stock Transfer & Trust Company, LLC
6201 15th Avenue
Brooklyn, NY 11219
Fax: (718) 331-1852
Attn: General Counsel


(d)    Any Communication authorized by this Agreement to be given or made by the Company or the Warrant Agent to any Holder shall be sufficiently given or made if sent by first-class mail, postage prepaid, or by facsimile, addressed to such Holder at the address of such Holder as shown on the registry books of the Company. The Company shall deliver a copy of

any notice or demand it delivers to any Holder to the Warrant Agent and the Warrant Agent shall deliver a copy of any notice or demand it delivers to any Holder to the Company.

**Section 9.4    Submission to Jurisdiction; Waiver of Jury Trial.**

(a)    <u>Submission to Jurisdiction</u>. Any action, suit or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall only be brought in any federal court located in the State of Delaware or any Delaware state court, and each party consents to the exclusive jurisdiction and venue of such courts (and of the appropriate appellate courts therefrom) in any such action, suit or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such, action, suit or proceeding in any such court or that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum; *provided, however,* that any action, suit or proceeding, seeking to enforce a final judgment rendered in such court may be brought in any court of competent jurisdiction. Process in any such action, suit or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court. Without limiting the foregoing, service of process on such party as provided in <u>Section 9.3</u> shall be deemed effective service of process on such party.

(b)    <u>Waiver of Jury Trial</u>. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE OUT OF OR RELATING TO THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY EXPRESSLY, IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION OR DISPUTE DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER AGREEMENTS RELATING HERETO OR ANY DEALINGS AMONG THEM RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY.  THE SCOPE OF THIS WAIVER IS INTENDED TO ENCOMPASS ANY AND ALL ACTIONS, SUITS AND PROCEEDINGS THAT RELATE TO THE SUBJECT MATTER OF THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS.  EACH PARTY REPRESENTS AND ACKNOWLEDGES THAT (i) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ACTION, SUIT OR PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) SUCH PARTY UNDERSTANDS AND WITH THE ADVICE OF COUNSEL HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (iii) SUCH PARTY MAKES THIS WAIVER VOLUNTARILY AND (iv) SUCH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND REPRESENTATIONS IN THIS SECTION 9.4(B).  IN THE EVENT OF LITIGATION THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**Section 9.5    Governing Law**. This Agreement and all disputes between the Parties under or relating to this Agreement or the facts and circumstances leading to its execution and delivery, whether in contract, tort or otherwise, will be governed by and interpreted and construed in accordance with the laws of the State of Delaware without giving effect to conflicts of laws principles that would result in the application of the law of any other state.

**Section 9.6    Binding Effect**. This Agreement shall be binding upon and inure to the benefit of the Company and the Warrant Agent and their respective successors and assigns, and the Holders from time to time of the Warrants. Subject to Section 3.3(f), nothing in this Agreement is intended or shall be construed to confer upon any Person, other than the Company, the Warrant Agent and the Holders of the Warrants, any right, remedy or claim under or by reason of this Agreement or any part hereof.

**Section 9.7    Counterparts**. This Agreement may be executed manually or by facsimile in any number of counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument.

**Section 9.8    Amendments**.

(a)    The Warrant Agent may, without the consent or concurrence of the Holders, enter into one or more supplemental agreements or amendments with the Company for the purpose of (i) evidencing the rights of the Holders upon consolidation, merger, sale, transfer, reclassification, liquidation or dissolution under Section 4.1(c), (ii) making any changes or corrections in this Agreement that are required to cure any ambiguity, to correct or supplement any provision contained herein that may be defective or inconsistent with any other provision herein or any clerical omission or mistake or manifest error herein contained, (iii) making such other provisions in regard to matters or questions arising under this Agreement as shall not adversely affect the interest of the Holders or be inconsistent with this Agreement or any supplemental agreement or amendment or (iv) adding further covenants and agreements of the Company in this Agreement or surrendering any rights or power reserved to or conferred upon the Company in this Agreement.

(b)    With the consent of the Holders of Warrant Certificates or Book-Entry Warrants evidencing at least a majority in number of the Warrants at the time outstanding, the Company and the Warrant Agent may at any time and from time to time by supplemental agreement or amendment add any provisions to or change in any manner or eliminate any of the provisions of this Agreement or of any supplemental agreement or modify in any manner the rights and obligations of the Holders and the Company. Notwithstanding anything to the contrary contained in this Agreement, no supplement agreement or amendment that changes the rights and duties of the Warrant Agent under this Agreement shall be effective against the Warrant Agent without the written consent of the Warrant Agent.

**Section 9.9    Third Party Beneficiaries**. The Holders shall be third party beneficiaries to the agreements made hereunder between the Company, on the one hand, and the Warrant Agent, on the other hand. All rights of action in respect of this Agreement are vested in the respective Holders of the Warrant Certificates or Book-Entry Warrants; *provided, however,*

that no Holder of any Warrant Certificate or Book-Entry Warrant shall have the right to enforce, institute or maintain any suit, action or proceeding against the Company to enforce, or otherwise act in respect of, the Warrants evidenced by such Warrant Certificate or Book-Entry Warrant, unless (i) such Holder shall have previously given written notice to the Company of the substance of such dispute, and Holders of at least 25% of the then outstanding Warrants shall have given written notice to the Company of their support for the institution of such proceeding to resolve such dispute, (ii) written notice of the substance of such dispute and of the support for the institution of such proceeding by such Holders shall have been provided by the Company to the Warrant Agent and (iii) the Warrant Agent shall not have instituted appropriate proceedings with respect to such dispute within 30 days following the date of such written notice to the Warrant Agent, it being understood and intended that no one or more Holders of Warrant Certificates or Book-Entry Warrants shall have the right in any manner whatever by virtue of, or by availing of, any provision of this Agreement to affect, disturb or prejudice the rights of any other Holders of Warrant Certificates or Book-Entry Warrants, or to obtain or to seek to obtain priority in preference over any other Holders or to enforce any right under this Agreement, except in the manner herein provided for the equal and ratable benefit of all Holders of Warrant Certificates and Book-Entry Warrants. Except as provided in this Section 9.9 subject to Section 3.3(f), no Holder of a Warrant Certificate or Book-Entry Warrant shall have the right to enforce, institute or maintain any suit, action or proceeding to enforce, or otherwise act in respect of, the Warrants, and nothing in this Agreement, express or implied, in intended to or shall be construed to give any person other than the parties to this Agreement, or any of their respective successors and permitted assigns any legal or equitable right, remedy or claim under or in respect of any agreement or provision contained herein.

Section 9.10    **Waivers**. The Company may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only if (i) the Company has obtained the written consent of Holders of Warrant Certificates and Book-Entry Warrants evidencing a majority of the then outstanding Warrants and (ii) any consent required pursuant to Section 9.8 has been obtained.

Section 9.11    **Inspection**. The Warrant Agent shall cause a copy of this Agreement to be available at all reasonable times at the office of the Warrant Agent for inspection by the Holder of any Warrant Certificate or Book-Entry Warrant. The Warrant Agent may require such Holder to submit his Warrant Certificate or Warrant Statement for inspection by it.

Section 9.12    **Headings**. The descriptive headings of the several Sections of this Agreement are inserted for convenience and shall not control or affect the meaning or construction of any of the provisions hereof.

Section 9.13    **Construction**. This Agreement has been freely and fairly negotiated among the parties. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and the Holders and no presumption or burden of proof will arise favoring or disfavoring any party because of the authorship of any provision of this Agreement.

845749.09-Chicago Server 2A - MSW

**Section 9.14  Severability**. In the event that any one or more of the provisions, paragraphs, words, clauses, phrases or sentences contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason, the validity, legality and enforceability of any such provision, paragraph, word, clause, phrase or sentence in every other respect and of the other remaining provisions, paragraphs, words, clauses, phrases or sentences hereof shall not be in any way impaired, it being intended that all rights, powers and privileges of the parties hereto shall be enforceable to the fullest extent permitted by law; *provided* that this Section 9.14 shall not cause this Warrant Agreement or the Warrants to differ materially from the intent of the parties as herein expressed.

**Section 9.15  Entire Agreement**. This Agreement and the Warrants set forth the entire agreement of the parties hereto as to the subject matter hereof and supersedes all previous agreements among all or some of the parties hereto with respect thereto, whether written, oral or otherwise, including the Restructuring Support Agreement; provided, however, that nothing herein contained shall amend, replace or supersede any agreement between the Company and the Warrant Agent to act as the Company's transfer agent for the outstanding Common Stock on a separate basis, which agreement shall remain of full force and effect.

[SIGNATURE PAGE FOLLOWS.]

845749.09-Chicago Server 2A - MSW

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed, as of the day and year first above written.

INSIGHT HEALTH SERVICES HOLDINGS CORP.

By: _____
    Name:
    Title:

AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC

By: _____
    Name:
    Title:

## EXHIBIT A
## FORM OF WARRANT CERTIFICATE


## INSIGHT HEALTH SERVICES HOLDINGS CORP.



No. _____


[_____]Warrants


## WARRANTS TO PURCHASE COMMON STOCK

THIS WARRANT HAS BEEN, AND THE COMMON STOCK WHICH MAY BE PURCHASED PURSUANT TO THE EXERCISE OF THIS WARRANT (THE "WARRANT SHARES," AND TOGETHER WITH THIS WARRANT, THE "SECURITIES") WILL BE, ISSUED PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER SECTION 1145 OF THE BANKRUPTCY REFORM ACT OF 1978, AS AMENDED (THE "BANKRUPTCY CODE"). THE SECURITIES MAY BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), PROVIDED THAT THE HOLDER IS NOT DEEMED TO BE AN UNDERWRITER AS SUCH TERM IS DEFINED IN SECTION 1145(b) OF THE BANKRUPTCY CODE. IF THE HOLDER IS DEEMED TO BE AN UNDERWRITER AS SUCH TERM IS DEFINED IN SECTION 1145(b) OF THE BANKRUPTCY CODE, THEN THE SECURITIES MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED UNLESS (1) THERE IS AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAW OR (2) THE COMPANY IS IN RECEIPT OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY AND ITS COUNSEL THAT SUCH DISPOSITION IS EXEMPT FROM THE REGISTRATION AND PROSPECTUS DELIVERY REQUIREMENTS OF THE SECURITIES ACT AND OF ANY APPLICABLE STATE SECURITIES LAWS. THE WARRANTS REPRESENTED BY THIS CERTIFICATE CANNOT BE TRANSFERRED IN A TRANSACTION WHICH WOULD SUBJECT THE COMPANY TO THE REPORTING REQUIREMENTS OF THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED. IN ADDITION THIS WARRANT MAY NOT BE EXERCISED FOR COMMON STOCK IN A TRANSACTION WHICH WOULD SUBJECT THE COMPANY TO THE REPORTING REQUIREMENTS OF THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED. THIS WARRANT MUST BE SURRENDERED TO THE COMPANY OR ITS TRANSFER AGENT AS A CONDITION PRECEDENT TO THE SALE, PLEDGE OR

OTHER TRANSFER OF ANY INTEREST IN ANY OF THE WARRANT SHARES REPRESENTED BY THIS WARRANT.

THE SECURITIES REPRESENTED BY THIS WARRANT ARE SUBJECT TO CERTAIN RESTRICTIONS ON EXERCISE, TRANSFER, SALE, ASSIGNMENT, PLEDGE, ENCUMBRANCE OR OTHER SIMILAR TRANSFER AS SET FORTH IN THE SECOND AMENDED AND RESTATED CERTIFICATE OF INCORPORATION OF THE COMPANY, A STOCKHOLDERS AGREEMENT AND A WARRANT AGREEMENT AMONG THE COMPANY AND THE WARRANT AGENT (ON BEHALF OF THE ORIGINAL HOLDERS OF THE WARRANT SHARES), COPIES OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE COMPANY.

This certifies that _____, or its registered assigns, is the owner of the number of Warrants set forth above, each of which represents the right to purchase, commencing on the Effective Date (as defined in the Warrant Agreement hereinafter referred to), from INSIGHT HEALTH SERVICES HOLDINGS CORP., a Delaware corporation (the *"Company"*), 0.00236 shares of Common Stock, par value $.01 per share (the *"Common Stock"*), of the Company (subject to adjustment as provided in the Warrant Agreement hereinafter referred to) at the purchase price (the *"Warrant Exercise Price"*) of $0.5074 per 0.00236 shares of Common Stock (subject to adjustment as provided in the Warrant Agreement) by: (a) surrendering this Warrant Certificate at the office of American Stock Transfer & Trust Company, LLC or to its successor as the warrant agent under the Warrant Agreement (any such warrant agent being herein called the *"Warrant Agent"*) (with (i) the Subscription Form set forth in the Warrant Certificate and (ii) the Joinder Agreement set forth in the Stockholders Agreement, in each case fully completed and duly executed), (b) delivering to the Warrant Agent the Subscription Form on the reverse hereof completed and duly executed, with signature guaranteed as therein specified and (c) delivering payment in full of the Warrant Exercise Price (subject to the cashless exercise provisions of Section 3.3(b) of the Warrant Agreement) by certified bank check or official bank check in New York Clearing House funds payable to the order of the Company and delivered to the Warrant Agent, all subject to the terms and conditions hereof and of the Warrant Agreement. This Warrant Certificate may be exercised as to all or any whole number of the Warrants evidenced hereby; provided that, so long as a Holder owns a sufficient number of Warrants, a Holder shall always exercise Warrants in a sufficient amount to obtain at least a full share of Common Stock upon such exercise.

Each outstanding Warrant may be exercised on any Business Day which is on or after the Effective Date and on or before the Expiration Date, but only if the exercise of such Warrant is exempt from the registration requirements of the Securities Act and Section 2.4(c) of the Warrant Agreement is not applicable to such exercise. Any Warrants not exercised by 5:00 p.m., New York City time, on the Expiration Date (or, if applicable, immediately prior to consummation of a transaction pursuant to Section 4.1(c) of the Warrant Agreement or a Drag-Along Sale, in each case, occurring prior to the Expiration Date) shall expire and all rights thereunder and all rights in respect thereof under this Warrant and the Warrant Agreement shall automatically terminate at such time.

This Warrant Certificate is issued under and in accordance with a Warrant Agreement dated as of March __, 2011 (the *"Warrant Agreement"*) by and between the Company and

A-2

American Stock Transfer & Trust Company, LLC, as Warrant Agent, and is subject to the terms and provisions contained therein, all of which terms and provisions the Holder of this Warrant Certificate consents to by acceptance hereof. The Warrant Agreement is hereby incorporated herein by reference and made a part hereof. Reference is hereby made to the Warrant Agreement for a full description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Company and the Holders. The summary of the terms of the Warrant Agreement contained in this Warrant Certificate is qualified in its entirety by express reference to the Warrant Agreement. All capitalized terms used in this Warrant Certificate that are defined in the Warrant Agreement shall have the meanings assigned to them in the Warrant Agreement.

Copies of the Warrant Agreement are on file at the office of the Warrant Agent and may be obtained by writing to the Warrant Agent at the following address:

American Stock Transfer & Trust Company, LLC
6201 15th Avenue
Brooklyn, NY 11219
Fax: (718) 331-1852
Attn: General Counsel

The number of shares of Common Stock obtainable upon the exercise of each Warrant is subject to adjustment as provided in the Warrant Agreement. As to any final fraction of shares of Common Stock which the same Holder of one or more Warrants would otherwise be entitled to purchase upon exercise thereof in the same transaction, the Company may pay the cash value thereof determined as provided in the Warrant Agreement.

The Holder shall pay any and all taxes (including income taxes) that may be payable in respect of the issue or delivery of shares of Common Stock on exercise of Warrants pursuant hereto. In addition, the Company shall not be required to pay any tax or other charge imposed in respect of any transfer involved in the issue and delivery of any certificates for shares of Common Stock or payment of cash or other property to any recipient other than the Holder of the Warrant Certificate surrendered upon the exercise of a Warrant, and in case of such transfer or payment, the Warrant Agent and the Company shall not be required to issue or deliver any certificate or pay any cash until (a) such tax or charge has been paid or an amount sufficient for the payment thereof has been delivered to the Warrant Agent or the Company or (b) it has been established to the Company's satisfaction that any such tax or other charge that is or may become due has been paid.

Subject to Section 2.4 of the Warrant Agreement, this Warrant Certificate and all rights hereunder are transferable by the registered Holder hereof, in any whole number of Warrants, in accordance with the provisions of the Warrant Agreement, on the register maintained by the Warrant Agent for such purpose at its office in Brooklyn, New York, upon surrender of this Warrant Certificate duly endorsed, or accompanied by a written instrument of transfer form satisfactory to the Company and the Warrant Agent completed and duly executed, with signatures guaranteed as specified in the attached Form of Assignment, by the registered Holder hereof or his attorney duly authorized in writing and upon payment of any necessary transfer tax or other governmental charge imposed upon such transfer. Upon any partial transfer, the Warrant Agent will issue and deliver to such Holder a new Warrant Certificate with respect to any portion not so transferred. Each taker and Holder of this Warrant Certificate, by taking and holding the

A-3

same, consents and agrees that prior to the registration of transfer as provided in the Warrant Agreement, the Company and the Warrant Agent may treat the Person in whose name the Warrants are registered as the absolute owner hereof for any purpose and as the Person entitled to exercise the rights represented hereby, any notice to the contrary notwithstanding. Each taker and Holder of a Warrant and each taker and holder of shares of Common Stock issued pursuant to a Warrant agrees to be bound by the terms and conditions of this Warrant and the Warrant Agreement.

This Warrant Certificate may be exchanged, in accordance with the terms of the Warrant Agreement, at the office of the Warrant Agent maintained for such purpose in Brooklyn, New York for Warrant Certificates representing the same aggregate number of Warrants, each new Warrant Certificate to represent such number of Warrants as the Holder hereof shall designate at the time of such exchange.

Prior to the exercise of the Warrants represented hereby, the Holder of this Warrant Certificate, as such, shall not be entitled to any rights of a stockholder of the Company, including, without limitation, the right to vote or to consent to any action of the stockholders, to receive dividends or other distributions, to exercise any preemptive right or to receive any notice of meetings of stockholders, and shall not be entitled to receive any notice of any proceedings of the Company except as provided in the Warrant Agreement. In the event a Holder exercises any Warrant and completes and duly executes the attached Subscription Form and the Joinder Agreement set forth in the Stockholders Agreement, and such Holder shall have agreed to be bound by the terms of such Stockholders Agreement, the Company shall admit such Holder as a stockholder of the Company and the Company shall record such admission on its books.

**This Warrant Certificate shall be void and all rights evidenced hereby shall cease on the Expiration Date.**

This Warrant Certificate shall not be valid for any purpose until it shall have been countersigned by the Warrant Agent.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed, as of the day and year first above written.

<div style="margin-left:40%">

INSIGHT HEALTH SERVICES HOLDINGS CORP.

By: _____
     Name:
     Title:


Dated: _____

</div>

A-4

Countersigned:

AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC

By: _____
    Name:
    Title:

Dated: _____

# FORM OF REVERSE OF WARRANT CERTIFICATE
## SUBSCRIPTION FORM
### (to be executed only upon exercise of Warrants)

To:_____

The undersigned hereby irrevocably exercises ____ of the Warrants represented by the Warrant Certificate to obtain _____ shares of Common Stock (subject to adjustment) of INSIGHT HEALTH SERVICES HOLDINGS CORP., a Delaware corporation (the *"Company"*), for each Warrant exercised, and herewith (check one, if election is available, otherwise complete second line below):

☐    elects to make payment by cashless exercise, or

☐    makes payment of $_____ (such payment being by certified bank check or official bank check in New York Clearing House funds payable to the order of the Company and delivered to the Warrant Agent equal to the Warrant Exercise Price of the Warrants being exercised)

on the terms and conditions specified in the Warrant Certificate and the Warrant Agreement therein referred to, and hereby surrenders this Warrant Certificate and all right, title and interest therein to and directs that the shares of Common Stock due upon the exercise of such Warrants be registered or placed in the name and the address specified below.

_____
Dated

_____
(Signature of Owner)

_____
(Street Address)

_____
(City) (State) (Zip Code)

_____
Signature Guaranteed By[1]

_____
[1]    The Holder's signature must be guaranteed by a member firm of a registered national securities exchange or of the National Association of Securities Dealers, Inc., a commercial bank or trust company having an office or correspondent in the United States or an "eligible guarantor institution" as defined by Rule 17Ad-15 under the Exchange Act.

Securities and/or check to be issued to: _____
Please insert social security or identifying number: _____

_____
Name

_____
Street Address

A-6

_____

City, State and Zip Code

# FORM OF ASSIGNMENT

FOR VALUE RECEIVED, the undersigned registered holder of the Warrant Certificate hereby sells, assigns and transfers unto the Assignee(s) named below (including the undersigned with respect to any Warrants constituting a part of the Warrants evidenced by the within Warrant Certificate not being assigned hereby) all of the rights of the undersigned under the Warrant Certificate, with respect to the whole number of Warrants set forth below:

_____

Name(s) of Assignee(s):

_____

Address:

_____

No. of Warrants:

Please insert social security or other identifying number of assignee(s):

_____

and does hereby irrevocably constitute and appoint _____ the undersigned's attorney to make such transfer on the books of _____ maintained for such purposes, with full power of substitution in the premises.

_____

Dated

_____

(Signature of Owner)

_____

(Street Address)

_____

(City) (State) (Zip Code)

_____

Signature Guaranteed By[1]

---

[1] The Holder's signature must be guaranteed by a member firm of a registered national securities exchange or of the National Association of Securities Dealers, Inc., a commercial bank or trust company having an office or correspondent in the United States or an "eligible guarantor institution" as defined by Rule 17Ad-15 under the Exchange Act.